UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IRONWORKERS LOCAL 808,
IRONWORKERS LOCAL UNION 808
PENSION FUND, IRONWORKERS
LOCAL UNION 808 ANNUITY FUND,
IRONWORKERS LOCAL UNION 808
APPRENTICESHIP FUND, RICKY
CANTU, WAYNE IVEY, PAUL METTE,
WES KENDRICK, GREG HOLMES,
MICHAEL HALE, SOUTHEASTERN
IRONWORKERS HEALTH CARE PLAN,
JODY CREWS, JIMBO BOYKIN, H.
PRESTON TAYLOR, ALEXANDER
BERGEL, LESTER HENSLEY, JACK
JARRELL, WILLIAM MCMILLIAN,
ROBERT DUFFIELD, YOSVANY
TORRES, WILLIAM BRADLEY, PAUL
METTE and WES KENDRICK,

    Plaintiffs,

v.                                                                                        Case No:   6:18-cv-810-Orl-40TBS

PROWELD, LLC,

    Defendant.
_____

## REPORT AND RECOMMENDATION

This case comes before the Court on the Motion for Entry of Default Judgment (Doc. 15), filed by Plaintiffs, Ironworkers Local 808, Ironworkers Local Union 808 Pension Fund, et. al. Upon due consideration I respectfully recommend that the motion be **granted**.

### I. Background

Plaintiffs bring this case against Defendant Proweld, LLC alleging violations of Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 of the National Labor Relations

Act, 29 USC § 185 (Doc. 1). Plaintiffs allege that Proweld was a Florida licensed contractor who had agreed to be bound by the terms of the collective bargaining agreement ("CBA") between Mid Florida Steel Erectors Association, Inc. and Ironworkers Local 808, and that it failed to perform as required (Id., ¶¶ 5, 7; Doc. 1-1 at 24).

In Count I, Plaintiffs demand an audit. They allege that under the terms of the CBA, each employer was required to

> [P]romptly furnish for inspection to the trustees or their designee, on demand, all payroll records relating to all Employees (not only those employees conceding by the Employer to be covered by a collective bargaining agreement requiring contributions to the fund). The payroll records required to be produced shall include but not be limited to: (1) IRS Form 941; (2) Unemployment compensation Tax Form UCT-6; (3) payroll journal; disbursements journal payroll subsidiary; (4) time and job record cards; (5) listing or schedule of subcontractors; (6) all other payroll records.

(Doc. 1-1 at 18, Section 14.14.13); (Doc. 1, ¶ 7).[1] As it relates to the agreement between Plaintiffs and Mid-Florida Steel Erectors, the CBA provides that

> If any Employer refuses to permit an examination audit, the Trustees may institute suit requiring the audit. In such event[,] all costs incidental there to, including attorney's fees and court costs, shall be paid by the Employer regardless of whether or not the Employer is found to be delinquent at the time the audit was commenced. The Employer further acknowledges that attorney's fees may be recovered in an action or proceeding for unpaid wage under this Agreement whether or not contributions remain unpaid.

(Doc. 1-1 at 18; Section 14.14.12); (Doc. 1 ¶ 8). On January 22, 2018, Plaintiffs' accountant, Steven D. Eisenberg, notified Defendant that he was selected to complete a payroll compliance audit and needed to review its books and records for the period

---

[1] Plaintiffs' recitation of the CBA contains numerous scriveners errors (i.e. the word "Employer" was inadvertently substituted for "Employee" when the passage was reproduced in the complaint). Compare (Doc. 1, ¶ 7) with (Doc. 1-1 at 18).

- 2 -

August 1, 2017 through that date of contact (Doc. 1, ¶ 9). On February 22, 2018, Mr. Eisenberg again requested access to Defendants' books and records for the purpose of performing the audit (Id., ¶ 10). Defendant failed to respond to both inquiries (Id.). On April 17, 2018 Defendant was notified that a lawsuit would be filed for its failure to submit to an audit (Id.).

In Count II, Plaintiffs bring a claim on behalf of the trustees and employee benefit plan for unpaid contributions (current and future), liquidated damages, interest and attorney's fees under ERISA §§ 502 and 515 (Id., ¶¶ 11-13). As a CBA signatory, Defendant requested referrals from the Ironworkers Local 808 (the "Union"), hired ironworkers represented by the Union, agreed to make payment of employee benefits to the trust funds, and "agreed to tender employee fringe benefit contributions and related dues and assessments … to the Plaintiffs for all hours worked and/or gross wages earned by … covered employees, monthly, for all months for which employees represented by the union performed work." (Id., ¶ 12). Plaintiffs allege that under the agreement, Defendant has failed and/or refused to make these contributions since September 2014 (Id.).

In Count III, Plaintiffs bring a claim on behalf the Union for unpaid dues check-off payments (Id., ¶¶ 11-14). Plaintiffs allege that Proweld withheld these payments from their employees' wages but failed to remit the contributions to the Union in accordance with the CBA (Id., ¶ 13).

## II. Discussion

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). However, a defendant's default alone does not require the court to enter a default

judgment. DIRECTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005). Before judgment is entered pursuant to FED. R. CIV. P. 55(b), there must be a sufficient basis in the pleadings to support the relief sought. Id. "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short ... a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]

If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. See Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543-44 (11th Cir. 1985). "Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts." See id. at 1544.

A. Appropriateness of the Clerk's Entry of Default

A plaintiff may serve a corporate defendant by,

> [D]elivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and–if the agent is one authorized by statute and the statute so requires–by also mailing a copy of each to the defendant[.]

FED. R. CIV. P. 4(h)(1)(B). A plaintiff may also serve a defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" FED. R. CIV. P. 4(h)(1)(A), 4(e)(1).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Florida Statutes permit process to be served on a limited liability company by serving its registered agent or any employee of the registered agent. FLA. STAT. § 48.062(1). Here, the return of service shows that on May 31, 2018, service of process was made on Naomi J. Aguilera, as Proweld's registered agent, at the location listed as the principal address for both the LLC and Ms. Aguilera: 54 Sorrento Ct., Satellite Beach, FL 32937 (Doc. 7 at 1).[3] This service of process satisfies the requirements of FLA. STAT. § 48.062(2). Upon being served with the summons and complaint, Proweld had through June 21, 2018 to respond. See FED. R. CIV. P. 12(a)(1)(A)(i) ("A defendant must serve an answer within 21 days after being served with the summons and complaint[.]"). No attorney has made an appearance (or filed an appropriate response) on behalf of the LLC and the time within to do so has passed. Thus, default was properly entered against Proweld.

B. Liability

Plaintiffs bring this action pursuant to Sections 502 and 515 of the ERISA statute, 29 U.S.C. § 1132 and 1145, which "creates a federal cause of action against employers who fail to make contributions to multiemployer plans that are required by the plan document or by a [CBA]." Michael J. Canan and Williams D. Mitchell, Employee Fringe & Welfare Benefit Plans, § 16:20 (2018 ed.); Florida West Coast Operating Eng'rs Local 925 Welfare Fund v. Sunbelt Sales & Rentals, Inc., 732 F. Supp. 1135, 1145 (M.D. Fla. 1990) ("[F]unds are entitled to the full contributions called for by the [CBA].")

---

[3] http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=PROWELD%20L060001157000&aggregateId=flal-l06000115700-b48589da-0809-4ca7-ba65-a20513a386a2&searchTerm=proweld%2C%20llc&listNameOrder=PROWELD%20L060001157000

Plaintiffs have shown that Proweld signed the CBA and thus agreed to be bound by the provisions that require participants to submit to periodic audits and to make various contributions to employee funds (Doc. 1-1). If an employer fails to make timely contributions, under the CBA, it is subject to liquidated damages, interest, and costs (Id. at 18; Sections 14.14.10 - 14.14.12). The CBA also provides for litigation (and the subsequent payment of related legal fees) in the event of an employer's failure to contribute to the fund or other failure to permit an examination audit (Id., at 18). The facts in the complaint are sufficient to establish that Proweld had a responsibility to make certain employee contributions under the CBA and that it repeatedly failed to do so. Therefore, I respectfully recommend that the district court find that liability has been established.

C. Damages

Under the CBA and related statutes, Plaintiffs are entitled to recover the principal amount of the unpaid contribution, interest on the unpaid contribution at the 12% rate provided for in the plan, liquidated damages, attorneys fees and costs of bringing the action. See 29 U.S.C.A. § 1132(g); (Doc. 1-1 at 18, Sections 14.14.11 thru 14.14.12). Accordingly, Plaintiffs assert that they are titled to judgment for the principal amount of $85,932.82; interest in the amount of $7,306.27; and a liquidated damages penalty of $7,306.27 (Doc. 15, ¶ 9). The exhibits and declarations submitted in support of Plaintiffs' claim[4] are sufficient to establish the amount of damages. Therefore, I respectfully recommend that the district judge award Plaintiffs $100,545.36 in damages.

---

[4] (Silva Decl., Doc. 15-2 at 1-3) (subtracting from the amount owed, the payment of $8,314.00 that Proweld made in January 2018); (Ernsberger Decl., Doc. 15-4 at 1-4); (Burgess Decl., Doc. 15-6); (Unger Decl., Doc. 15-7); (Lobb Decl. Doc. 15-8); (Green Decl., Doc. 15-9); (Dygert Decl., Doc. 15-10).

D. Attorney's Fees

Plaintiffs also seek $4,452.75 in attorney's fees and $400.00 for the filing fee to bring this action (Doc. 15 at ¶ 7). The CBA evidences Plaintiffs' entitlement to seek fees when it is necessary to initiate a lawsuit to collect delinquent contributions. See (Doc. 1-1 at 18, Sections 14.14.10-14.14.11). Tobe Lev, attorney of record for Plaintiffs has submitted a declaration in which he says he spent 33.96 hours representing the interests of the twenty-two Plaintiffs at a rate of $150.00 per hour (Doc. 15-3).

Because Proweld has not responded to the motion, the Court lacks the benefit of scrutiny and analysis from the opposing party. See Godoy v. New River Pizza, Inc., 565 F. Supp. 2d 1345, 1347 (S.D. Fla. 2008) (noting that the adversarial process normally aids the Court in determining whether the amount of attorney's fees requested is reasonable.). Nevertheless, the Court has a duty to ensure that the request for attorney's fees is reasonable. Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co., 527 F. Supp. 2d 1355, 1371 (M.D. Fla. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433-434 (1983)). "The Court may use its own expertise and judgment to make an appropriate independent assessment of the value of the attorney's services." Chemische Fabrik Budenheim KG v. Bavaria Corp. Intern., No. 6:08-cv-1182-Orl-22DAB, 2010 WL 98991, at * 5 (M.D. Fla. Jan. 6, 2010).

In the Eleventh Circuit, courts use the lodestar approach to determine reasonable attorney's fees. Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292 (11th Cir. 1988). The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the services provided by counsel for the prevailing party. Id. at 1299. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended

and hourly rates." Hensley, 461 U.S. at 437. The fee applicant can satisfy its burden "by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates." Chemische, 2010 WL 98991, at *4. Once the Court has determined the lodestar, it may adjust the amount upward or downward based upon a number of factors, including the results obtained. Norman, 836 F.2d at 1302.

### 1. Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. The applicant bears the burden of producing satisfactory evidence that the requested rates are in line with the prevailing market rates. Id. In addition, "the Court may use its own expertise and judgment to make an appropriate independent assessment of the value of the attorney's services." Chemische, 2010 WL 98991, at *4 (citing Norman, 836 F.2d at 1303); see also Perez v. Sanford-Orlando Kennel Club, Inc., et al., No. 6:05-cv-269-Orl-28KRS, 2009 WL 2500290, at *2 (M.D. Fla. Aug. 14, 2009) ("It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorney's fees."). When determining whether a rate is reasonable the Court considers the following factors:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases.

Bivins v. Wrap It Up, Inc., 380 F. App'x 888, 890 (11th Cir. 2010) (citing Johnson v.

Georgia Highway Exp., Inc., 488 F.2d 714 (5th Cir. 1974), overruled on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989)).

Having considered the Bivins/Johnson factors and the Court's own expertise and knowledge of prevailing market rates, I find that the requested hourly rate is objectively reasonable and accordingly recommend the Court apply counsel's reasonable rate of $150 per hour.

### 2. Reasonable Hours Spent

Next, the Court must determine the number of hours reasonably expended by counsel. Prevailing attorneys "must exercise their own billing judgment to exclude any hours that are 'excessive, redundant, or otherwise unnecessary." Galdames v. N & D Inv. Corp., 432 F. App'x 801, 806 (11th Cir. 2011) (citations and inner quotations omitted). Attorneys may only bill adversaries for the same hours they would bill a client. Resolution Trust Corp. v. Hallmark Builders Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). A court may reduce excessive, redundant, or otherwise unnecessary hours, or may engage in "an across-the-board cut," as long as the Court adequately explains its reasons for doing so. Galdames, 432 F. App'x at 806 (citations omitted). Counsel has included a declaration, with exhibits, which states the hours spent on this litigation with the requisite specificity (Doc. 15-3 at). Thus, I find that the amount of hours spent on this matter was reasonable and recommend that the district court award counsel all fees requested.

### E. Taxation of Costs

A prevailing party is generally entitled to an award of all taxable costs incurred in litigating the dispute. See FED. R. CIV. P. 54(d)(1); see also 29 U.S.C. § 216(b). In consideration of Defendants' default, the Court finds that Plaintiff is the "prevailing party." See Jean-Louis v. Greenberg, No. 08-81205-Civ-Hurley/Hopkins, 2009 U.S. Dist. LEXIS

98487, at *4 (S.D. Fla. Sept. 29, 2009) ("[T]he entry of a default judgment against Defendants renders Plaintiff the prevailing party."). The law provides:

> A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title [28 USCS § 1923]; [and] (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title [28 USCS § 1828].

28 U.S.C. § 1920.

Plaintiffs seek reimbursement of the $400 filing fee required to bring this action (Doc. 15 at 3). This cost is recoverable under 28 U.S.C. § 1920 and I respectfully recommend the district judge permit the recovery thereof.

### III. Recommendation

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the district judge:

(1) **GRANT** Plaintiffs' Motion for Entry of Default Judgment (Doc. 15);

(2) **DIRECT** the Clerk to enter Judgment in Plaintiffs' favor and against Proweld in the amount of $105,398.11 in unpaid contribution, interest on the unpaid contribution at the 12% rate provided for in the plan, liquidated damages, attorneys fees and costs; and

(3) **TERMINATE** all pending motions and **CLOSE** this case.

### IV. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual

finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**DONE** and **ORDERED** in Orlando, Florida on October 24, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Any Unrepresented Parties